UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **RONALD RHYMES** | **CIVIL ACTION NO. 05-1686** |
| **VS.** | **SECTION P** |
| **LOUISIANA DEPARTMENT OF CORRECTIONS, ET AL.** | **JUDGE JAMES** <br> **MAGISTRATE JUDGE HAYES** |

## REPORT AND RECOMMENDATION

Before the court is a Petition for Damages filed by *pro se* plaintiff Ronald Rhymes. Plaintiff, an inmate in the custody of the Louisiana Department of Public Safety and Corrections, filed his petition in Louisiana's Fourth Judicial District Court on June 22, 2005. Characterizing the complaint as one arising under 42 U.S.C. §1983, defendant Richwood Correctional Center (RCC) filed a petition for removal on September 26, 2005.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court.

## STATEMENT OF THE CASE

The pleadings establish the following relevant facts:

On June 22, 2005, plaintiff Ronald Rhymes filed a Petition for Damages in the Fourth Judicial District Court, Ouachita Parish, Louisiana. [See Doc. 4, "Petition for Removal" at ¶ 1] The pleadings and other records of this court [See *Ronald Rhymes v. John Flynn, et al.*, No. 1:02-cv-2417; *Ronnie Rhymes v. Warden Tillery*, No. 1:05-cv-0931] establish that plaintiff was convicted of cruelty to juveniles in the Ninth Judicial District Court, Rapides Parish. He was

1

sentenced to serve ten years and committed to the custody of the LDOC for that purpose. Among other things, plaintiff was prohibited from having contact of any sort with his minor children.

Plaintiff contends that on February 8, 2003, his attorney, Noland Hammond, notified him that he had reached an agreement with Rapides Parish Assistant District Attorney John Flynn to lift the "no contact" order. Thereafter, plaintiff was allowed visitation in prison with his minor children from October, 2003 until January, 2004, when his ex-wife, Cherie Driggers refused to permit further visitation.

On December 18, 2004, plaintiff sent Christmas cards to his children. When Ms. Driggers discovered the cards, she notified the LDOC and advised them that plaintiff was in violation of the original "no contact" order. Based upon Ms. Driggers's assertion, plaintiff was placed in administrative segregation or "lock down" by RCC Warden Clovis Tillery. Plaintiff remained in "lock down" from December 22, 2004, through December 28, 2004, when it was discovered that the allegations were false and plaintiff was released from "lock down."

On January 10, 2005, plaintiff appeared before the Louisiana Parole Board. The Board denied parole based upon the alleged violation of the "no contact" order.

In his Petition for Damages, plaintiff names the following defendants: (a) the Louisiana Department of Public Safety and Corrections (LDOC), (b) the Louisiana Parole Board, (c) the Richwood Correctional Center (RCC), (d) RCC Warden Clovis Tillery, (e) Rapides Parish Assistant District Attorney John Flynn, (f) Attorney Noland J. Hammond, (g) plaintiff's ex-wife, Cherie Driggers, and (h) her husband Terry Driggers.

Plaintiff prays for punitive damages in the amount of $1,000.00/day from each defendant for each day that plaintiff has been wrongfully deprived of his liberty because of the erroneous

information used by the Parole Board in denying his parole. Plaintiff also asks the court to order the Parole Board to grant plaintiff a rehearing. Plaintiff also asks for compensatory damages of $500,000 from the defendants in their official capacities for violating his right to equal protection of the law by failing to ensure plaintiff his right to child visitation. He also asks for $25,000 from the defendants in their personal capacities for causing plaintiff to suffer cruel and unusual punishment, stress, and worry and physical suffering. Finally, plaintiff prays for an order expunging his disciplinary conviction from the records of the LDOC and the Parole Board. [Doc. 1]

Defendant RCC was served with citation in connection with the proceedings on August 25, 2005. [See Doc. 3, "Motion for Extension of Time"; see also Doc. 20] On September 26, 2005, defendant RCC filed a Petition for Removal. [Doc. 4] On September 30, 2005, Magistrate Judge and Clerk of Court Robert H. Shemwell signed the Removal Order. The Order was thereafter filed on October 3, 2005. [Doc. 8]

## LAW AND ANALYSIS

### 1. Frivolity Review

When a prisoner files a complaint in a civil action seeking redress from a governmental entity or officer or employee of a governmental entity, the district court is obliged to review the complaint as soon as is feasible and to dismiss the case if it determines that the complaint is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. See 28 U.S.C.A. § 1915A (stating that when a prisoner seeks redress from a governmental entity or one of its employees, the court shall review the complaint as soon as practicable and dismiss it if the court finds the complaint

frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief); 42 U.S.C.A. § 1997e(c) (providing that a district court shall on its own motion or the motion of any party dismiss a complaint by a prisoner regarding prison conditions if the court is satisfied the complaint is frivolous, malicious, falls to state a claim upon which relief may be granted, or seeks monetary relief from an immune defendant). Ordinarily, this review is accomplished prior to service of process. However, in this case, service of process was accomplished (at least as to some defendants) prior to the time that removal was ordered.

A claim is frivolous if it has no arguable basis in law or fact. *Nietzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). A claim has no arguable basis in law if it is based on an indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Davis v. Scott*, 157 F.3d 1003, 1005 (5th Cir.1998) (quotation omitted). A claim has no arguable basis in fact if "after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless." *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir.1998).

A civil rights plaintiff must support his claim(s) with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995).

### 2. Plaintiff's Claims

Construed liberally, plaintiff's Petition raises three distinct claims. First, plaintiff argues that the Louisiana Parole Board's January 10, 2005, denial of parole was based upon erroneous information and resulted in the wrongful deprivation of his liberty. Second, plaintiff faults the

defendants for "failing to ensure" his child visitation rights. Finally, plaintiff contends that his stay in "lock down" during the period from December 22 - 28, 2004, was based on false information.

## A. Parole Claim

Plaintiff claims that the Louisiana Parole Board relied upon false information when it denied him parole on January 10, 2005. He seeks not only damages for the wrongful denial of parole, but also a rehearing before the Parole Board. Fifth Circuit jurisprudence is clear. In *Serio v. Members of Louisiana Board of Pardons*, 821 F.2d 1112 (5th Cir. 1987), the Court articulated a series of three bright line rules for use in analyzing civil rights suits attacking the validity of the actions of state parole boards. In that case, the Fifth Circuit held: (1) "Prisoners who challenge the constitutionality of their convictions or sentences must exhaust their state remedies." *Serio*, 821 F.2d at 1117; (2) "If a prisoner challenges a single [parole] hearing as constitutionally defective, he must first exhaust state *habeas* remedies." *Serio*, 821 F.2d at 1118; and, (3) "Such claims must also be pursued initially through *habeas corpus*." *Serio*, 821 F.2d 1119.

Although plaintiff does not explicitly seek release from confinement in his Petition for Damages, resolution of this claim would require the court to find that his violation of the allegedly non-existent "no contact" order played a decisive role in the Parole Board's decision denying parole.[1] In essence, he is challenging the January, 2005 parole hearing as constitutionally

---

[1] As shown above, plaintiff prayed for damages from each defendant for each day that he been wrongfully deprived of his liberty <u>because of the erroneous information used by the Parole Board in denying his parole.</u> [See Doc. 1-1, p. 4] However, he also prays for "...a rehearing by the Board of Parole whereas Plaintiff can receive a fair and impartial hearing." [*id.*]

defective. Therefore, plaintiff must first pursue this claim through *habeas corpus* with its attendant exhaustion requirement. Compare *Serio*, at pp. 1118 - 1119.

To the extent that plaintiff's first claim must be construed as a *habeas corpus* claim, plaintiff is advised that he must fully exhaust state remedies before seeking federal *habeas* relief. 28 U.S.C. § 2254(b). Exhaustion occurs in this context when a petitioner has submitted the factual and legal basis of his claim to the highest available state court for review. *Carter v. Estelle*, 677 F.2d 427, 443 (5th Cir.1982), *cert. denied*, 460 U.S. 1056, 103 S.Ct. 1508, 75 L.Ed.2d 937 (1983). In Louisiana, the highest state court is the Louisiana Supreme Court. A review of the reliable published jurisprudence of the State of Louisiana reveals that, with regard to the plaintiff, only one matter involving the plaintiff has been litigated to completion before the Louisiana Supreme Court. See *State ex rel. Ronald Rhymes v. State of Louisiana*, 2006-2266 (La. 6/3/2005), 903 So.2d 448. Therein, the Louisiana Supreme Court, citing *State ex rel. Bernard v. Cr.D.C.*, 94-2247 (La. 4/28/95), 653 So.2d. 1174, denied a writ application filed by plaintiff. The *Bernard* case, cited by the Louisiana Supreme Court, deals with the obligation of the Louisiana courts to provide court records to indigent inmates. Clearly, plaintiff did not seek review of the Parole Board's decision denying parole in that case. Consequently, the Louisiana Supreme Court has never had an opportunity to consider his parole claim. Therefore, dismissal of this first claim is recommended since plaintiff has failed to exhaust all available state court remedies.

## B. Failure to Ensure Child Visitation

Plaintiff claims that in January, 2004, "...Plaintiff's divorced wife, Cherie Rhymes Cupp Driggers refused to comply with visitation rights and privileges taking it upon herself to

discontinue contact of the children with their father..." [Doc. 1-1, p. 3]

This matter was removed from State court on the basis of federal question jurisdiction. The Defendant contended that the claims asserted in the petition arose under 42 U.S.C. §1983. To the extent that plaintiff's complaint arises under 42 U.S.C. §1983, it clearly fails to state a claim for which relief may be granted. "In order to recover under §1983, a plaintiff must prove (1) that he was deprived of a federally protected right, and (2) that the deprivation occurred under color of state law. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155, 98 S.Ct. 1729, 1733, 56 L.Ed.2d 185 (1978). In order to prove the deprivation of a right protected by the Due Process Clause of the Fourteenth Amendment, a plaintiff must prove state action. *Doe v. Rains County Indep. Sch. Dist.*, 66 F.3d 1402, 1406 (5th Cir.1995). In §1983 actions alleging the deprivation of due process rights, the Fourteenth Amendment's 'state action' requirement and §1983's 'under color of state law' requirement collapse into a single inquiry. *Id.*" *Landry v. A-Able Bonding, Inc.*, 75 F.3d 200, 203 (5th Cir. 1996).

The plaintiff may satisfy the "under color of state law" requirement by proving that the conduct causing the deprivation is "fairly attributable to the State" which means proof (1) that the deprivation was caused by the exercise of a state-created right or privilege, by a state-imposed rule of conduct, or by a person for whom the state is responsible, and (2) that the party charged with the deprivation may be fairly described as a state actor. *Landry v. A-Able Bonding, Inc.*, *supra*, at 203-04 (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)). Plaintiff's Petition suggests that the person responsible for the deprivation of plaintiff's visitation rights was his estranged wife, Ms. Driggers. Ms. Driggers (and her husband, who has also been named as a defendant) are not state actors, and therefore plaintiff cannot state a claim cognizable in federal

court against these defendants.

Further, to the extent that plaintiff faults the remaining defendants who may be "state actors," his claim fares no better because plaintiff has no constitutional right to visitation privileges. *Berry v. Brady*, 192 F.3d 504, 508 (5th Cir.1999). To the extent that plaintiff's petition implies (1) that he has a liberty interest in visitation privileges, (2) that the prison policies on visitation created a liberty interest, and (3) that prison officials' failed to follow their own policies, his claims do not present constitutional issues and thus do not state cognizable claims under 42 U.S.C. § 1983. See *Doe v. Rains County Indep. Sch. Dist.*, 66 F.3d 1402, 1406 (5th Cir.1995).

## C. Lock-Down

Finally, plaintiff complains that erroneous information resulted in his detention in lock-down for a week in December, 2004. Following *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 2294, 132 L.Ed.2d 418 (1995), prisoners' potential Fourteenth Amendment due process liberty claims were drastically narrowed. Prisoners have a liberty interest only in "freedom[s] from restraint ... impos[ing] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," and these will normally consist of deprivations which clearly impinge on the <u>duration</u> of confinement. *Orellana v. Kyle*, 65 F.3d 29, 31-32 (5th Cir.1995)(quoting *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 2294, 132 L.Ed.2d 418 (1995)).

Plaintiff lost no "good time" by virtue of the allegedly inadequate and arguably "unfair" disciplinary proceeding which resulted in his week long stay in lock down; therefore, he has no federally protected due process rights in connection with the proceeding. Consequently,

8

plaintiff's third claim against the defendants lacks an arguable basis in law and is frivolous. *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

## CONCLUSION

Plaintiff raised three claims in his Petition for Damages: (a) plaintiff maintained that the Louisiana Parole Board's January 10, 2005, denial of parole was based upon erroneous information and resulted in the wrongful deprivation of his liberty; (b) he faulted the defendants for "failing to ensure" his child visitation rights; and, (c) he contended that his stay in "lock down" during the period from December 22 - 28, 2004, was based on false information.

Plaintiff's wrongful denial of parole is more appropriately presented in a petition for writ of *habeas corpus*. However, even if plaintiff's petition is so construed, plaintiff's obvious failure to exhaust available state court remedies prohibits federal court action on his petition at this time. To the extent that Plaintiff may state valid claims for relief under Louisiana law, he should be permitted to urge those claims in the forum he has chosen. It is therefore recommended that his habeas claim be remanded to State Court in Louisiana for further proceedings.

Plaintiff's denial of visitation complaint does not state a claim cognizable under 42 U.S.C. §1983. His estranged wife and her spouse are not "state actors." He has no federal constitutional right to visitation in prison. Therefore, to the extent that his claims may be said to arise under §1983, they are frivolous and dismissal is recommended. However, to the extent that his claims against his estranged wife and her spouse may arise out of Louisiana law, it is again recommended that they be remanded for further proceedings.

Finally, plaintiff's complaint concerning wrongful detention in lock down fails to state a claim for which relief may be granted under the provisions of §1983, and it is recommended that

this portion of his claim be dismissed.

Accordingly,

**IT IS RECOMMENDED** that the portion of plaintiff's Petition for Damages related to alleged §1983 violations be **DISMISSED WITH PREJUDICE** for failing to state a claim on which relief may be granted in accordance with the provisions of 28 U.S.C. §§ 1915 and 1915A.

**IT IS FURTHER RECOMMENDED** that plaintiff's State Law claims be remanded to the Fourth Judicial District Court for further proceedings.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See** *Douglas v. United Services Automobile Association,* **79 F.3d 1415 (5th Cir. 1996).**

**THUS DONE AND SIGNED** in Chambers at Monroe, Louisiana, this 14th day of February, 2006.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE